IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DONALD H. GARDENER, p/k/a<br>BLACKA NICE,<br><br>Plaintiff,<br><br>vs.<br><br>RAMON LUIS AYALA-RODRIGUEZ,<br>p/k/a DADDY YANKEE, EL CARTEL<br>RECORDS, INC., LOS CANGRIS<br>PUBLISHING, MACHETE MUSIC,<br>UNIVERSAL MUSIC DISTRIBUTION<br>CORP., UNIVERSAL MUSIC GROUP,<br>VIDAL INVESTMENT, INC., and<br>VI MUSIC, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cause No. 07-cv-6535-RJS<br><br>**PLAINTIFF'S RESPONSE TO<br>DEFENDANTS' FIRST SET OF<br>INTERROGATORIES** |

Comes now Plaintiff Donald H. Gardener, by his attorneys and files herewith his

Response to Defendants' First Set of Interrogatories directed to said Plaintiff.

1. State and identify the services you allegedly provided to defendants in respect to

the Composition.

**ANSWER:    Plaintiff and Defendant Raymon Luis Ayala-Rodriguez p/k/a "Daddy**

**Yankee" ("Defendant Yankee") collaborated to create the song known as "Dale Caliente"**

**("Composition").    More specifically, Plaintiff states that on two occasions prior to**

**recording Plaintiff's contribution to the Composition, Defendant Yankee and he spoke**

**about (1) Plaintiff's culture, language and music, (2) about a new genre based on a fusion**

**of several genres including Reggae known as Reggaeton, and (3) about making a song**

**together. Following the discussions, Plaintiff states that Defendant Yankee and he traveled**

**to a studio in New York city where Defendant Yankee then produced an instrumental of**

the Composition (no lyrics).  After playing the instrumental and a brief discussion about what the theme or concept would be, Defendant Yankee asked Plaintiff to come up with a verse and add lyrics to the instrumental.  Plaintiff did come up with a verse to the instrumental and recorded it.

      2.     State and identify the services you allegedly provided defendants in respect to the Master.

**ANSWER:**    **See Plaintiff's answer to Question 1 above.  Plaintiff performed his contribution to the Composition at the studio and that performance was recorded and incorporated with the instrumental to form a master recording, portions of which were edited to create the final Master of the song entitled "Dale Caliente".**

      3.     State and identify any documents you or defendants signed in relation to the services you provided with respect to the Composition.

**ANSWER:**    **Plaintiff answers and states he has not been presented with or signed any documents in relation to his services as a co-writer of the Composition.  Plaintiff is without knowledge as to whether Defendants have signed any documents in relation to Plaintiff's services with respect to the Composition.**

      4.     State and identify any documents you or defendants signed in relation to the services you provided with respect to the Master.

**ANSWER:**    **Plaintiff answers and states he has not been presented with or signed any documents in relation to his services with respect to the Master.  Further, Plaintiff is without knowledge as to whether Defendants have signed any documents in relation to Plaintiff's services provided with respect to the Master.**

5.    State and identify any documents having any relation to the services you provided with respect to the Master.

**ANSWER:    All documents referencing or identifying any and/or all of the recording sessions of the Master, communications, electronic or paper, that reference Plaintiff, and any agreements, contracts or memoranda that Defendants may possess concerning the clearance of the Master, for inclusion of and/or distribution of any album or compact disc or DVD containing the Master.  Defendants are in the best position to more adequately identify any and all such documents and are likely in possession of said documents.**

6.    State and identify any documents having any relation to the services you provided with respect to the Composition.

**ANSWER:    See Plaintiff's answer to Question 5 above.**

7.    State and identify the terms of the oral agreement you reached with defendants, including but not limited to, compensation, if any, in respect to the Composition.

**ANSWER:    Plaintiff answers and states that he did not have any agreement oral or otherwise with any of Defendants, except Defendant Yankee.  Plaintiff further answers and states that Defendant Yankee asked him to do a song with him in which Plaintiff would be featured.**

8.    State and identify the terms of the oral agreement you reached with defendants, if any, including but not limited to, compensation, if any, with respect to the Master.

**ANSWER:    Plaintiff answers and states there was no oral agreement reached with any Defendants with respect to the Master either prior to or following the international releases of the Master.**

9.     State and identify the person or persons with whom you negotiated any agreement, oral or written, if any with respect to the Composition.

**ANSWER:    Plaintiff answers and states that he himself only recalls having spoken with Defendant Yankee with respect to the Composition.**

10.     State and identify the person or persons with whom you negotiated any agreement, if any, with respect to the Master.

**ANSWER:    None.**

11.     State and identify your relationship with Levit.

**ANSWER:    Plaintiff is acquainted to Levit through his brother Dexter Gardener. Levit had been to Plaintiff's studio on a few oc casions prior to 2003 and listened to Plaintiff's music.**

12.     State and identify your knowledge as to the whereabouts of Levit.

**ANSWER:    See Plaintiff's answer to question 11 above and further answers that he does not know anything as to Levit's current whereabouts.**

13.     State and identify the role Levit played, if any, in the negotiations of any alleged agreement with respect to the Composition.

**ANSWER:    Plaintiff answers that Levit introduced Defendant Yankee to Plaintiff in a phone call.**

14.     State and identify the role Levit played, if any, in negotiations of any alleged agreement with respect to the Master.

**ANSWER:    See Plaintiff's answer to question 13 above.**

15.     State and identify your relation with Prado.

**ANSWER:    No relationship.**

16.    State and identify the role Prado played, if any, in the negotiation of any alleged agreement with respect to the Composition.

**ANSWER:    None.**

17.    State and identify the role Prado played, if any, in the negotiation of any alleged agreement with respect to the Master.

**ANSWER:    Plaintiff is unaware of any agreement with respect to the Master and therefore is unable to identify any role Prado played.**

18.    State and identify any consideration you received for your contribution to the Composition.

**ANSWER:    None.**

19.    State and identify any consideration you received for your contribution to the Master.

**ANSWER:    None.**

20.    State the factual circumstances surrounding your being contacted by defendant as alleged in paragraph 16 of the Complaint.

**ANSWER:    Plaintiff answers and states that he spoke with Defendant Yankee twice prior to the creation and recording of the Master in 2003. An acquaintance of both Defendant Yankee and Plaintiff, named Levit, telephoned Defendant Yankee and introduced them to each other. Defendant Yankee and Plaintiff spoke about a number of things including Defendant Yankee's desire to feature a Jamaican artist on a song that would include a Jamaican sound. Defendant Yankee then asked Plaintiff to come to Puerto Rico to work with him to create such a song. Plaintiff states he was unable to travel to Puerto Rico at that time. On a separate occasion, not too long after the initial phone call**

between Plaintiff and Defendant Yankee, Defendant Yankee appeared at Plaintiff's home, in New York, USA, and again discussed the sort of song and collaboration he wanted to include in his upcoming album, namely a song that included a Jamaican sound and that would feature Plaintiff.

21.    State the terms of your agreement to collaborate with defendants as alleged in paragraph 17 of the Complaint.

**ANSWER:    See Plaintiff's answer to Interrogatories numbers 7 and 8 above. Further, Plaintiff answers that the understandings were clear in that Plaintiff in fact collaborated with Defendant Yankee prior to traveling to the studio about making a song together, and then upon arriving at the studio Defendant Yankee produced an instrumental (no lyrics) of the Composition and prior to Plaintiff's actual performance they discussed the sound and song and agreed to have Plaintiff record his contribution to the Composition.**

22.    State the factual circumstances surrounding your allegations set forth in paragraph 18 of the Complaint.

**ANSWER:    See Plaintiff's answer to Interrogatory number 21 above. Plaintiff further answers and states Defendant Yankee, while sitting in Plaintiff's home asked him to go to a studio in New York city. Plaintiff followed Defendant Yankee to the studio where he handed the studio engineer a disc containing session files for the instrumental of the song now known as "Dale Caliente". Defendant Yankee and Plaintiff listened to the instrumental. Defendant Yankee and Plaintiff discussed themes or ideas for the song and then Plaintiff composed and performed portions of the song that were recorded.**

**Defendant Yankee took the updated session files and recordings with Plaintiff's contribution with him to complete the song according to Defendant Yankee.**

23.    State the factual circumstances surrounding your allegations set forth in paragraph 20 of the Complaint.

**ANSWER:    See Plaintiff's answers to Interrogatories 21 and 22 above.    Plaintiff further states that before leaving with Plaintiff's contributions to the song, Defendant Yankee specifically requested and received Plaintiff's ASCAP information for registration and stated that he would be contacting Plaintiff for final mixing and mastering of the song.**

24.    State the factual basis surrounding your allegations set forth in paragraph 21 of the Complaint.

**ANSWER:    See Plaintiff's answer to Interrogatory number 23 above.**

25.    State and identify any documents forming the basis for the allegations set forth in paragraph 21 of the Complaint.

**ANSWER:    Plaintiff is without knowledge and unaware of any documents forming the basis for the allegations set forth in paragraph 21 of the Complaint. However, the existence of any such documents are within the control and possession of Defendants.**

26.    State the factual basis surrounding your allegations set forth in paragraph 22 of the Complaint.

**ANSWER:    See Plaintiff's answers to Interrogatories 20, 21, 22, and 23 above. Plaintiff further states that Defendants did not approach him at any relevant time to sign any documents to the contrary.**

27.    State and identify any documents forming the basis for the allegations set forth in paragraph 22 of the Complaint.

**ANSWER:  Plaintiff is without knowledge and unaware of any documents forming the basis for the allegations set forth in paragraph 22 of the Complaint. However, the existence of any such documents are within the control and possession of Defendants in that the original recordings of Plaintiff's contributions to the song were taken by Defendant Yankee to complete the song on a later occasion.**

28.    State the factual basis surrounding your allegations set forth in paragraph 24 of the Complaint.

**ANSWER:   Plaintiff states that there is no dispute that he contributed to the song and that the final version of the song contains his voice and the Composition and Master both contain the collaborative expressions and contributions of both Plaintiff and Defendant Yankee.**

29.    State and identify any documents forming the basis for the allegations set forth in paragraph 24 of the Complaint.

**ANSWER:   Plaintiff answers and states that the Composition and Master themselves and all related documentation with respect the recording, mixing and mastering of the song along with other documents uniquely in the control and possession of Defendants hereto form additional basis for the allegations set forth in paragraph 24 of the Complaint.   Plaintiff will seasonably supplement his answer with any additional information uncovered in and throughout discovery.**

30.    State the factual basis surrounding your allegations set forth in paragraph 25 of the Complaint.

**ANSWER:   The Recording Industry Association of America (RIAA) performed an audit of the number of Barrio Fino albums sold.**

31.    State and identify any documents forming the basis for the allegations set forth in paragraph 25 of the Complaint.

**ANSWER:    The formal report conducted by the independent accounting firm used by the Recording Industry Association of America is with Daddy Yankee's record company.**

32.    State the factual basis surrounding your allegations set forth in paragraph 28 of the Complaint.

**ANSWER:    Plaintiff states that the facts surrounding the allegations set forth are easily attainable by Defendant Yankee and simply states that Plaintiff has witnessed several performances and/or recordings of performances of Defendant Yankee in which he has performed the song "Dale Caliente". Plaintiff further states discovery is ongoing and will seasonably supplement this answer.**

33.    State and identify any documents forming the basis for the allegations set forth in paragraph 28 of the Complaint

**ANSWER:    Plaintiff answers and states discovery is ongoing and will seasonably supplement this answer.**

34.    State the factual basis surrounding your allegations set forth in paragraph 29 of the Complaint.

**ANSWER:    Plaintiff answers and states Defendants have not listed Plaintiff as a co-author of the song "Dale Caliente" in the album credits nor has Defendant Yankee or Defendant Los Cangris Publishing acknowledged Plaintiff's contribution to the song with ASCAP in spite of obtaining Plaintiff's ASCAP information.**

35.    State and identify any documents forming the basis for the allegations set forth in paragraph 29 of the Complaint.

**ANSWER:    Plaintiff answers and states that the album credits for Barrio Fino and Barrio Fino En Directo fail to acknowledge Plaintiff as a co-author. Further, neither the registrations filed with the US Copyright Office or with ASCAP reflect Plaintiff's contribution as a co-author of the Master or Composition of "Dale Caliente".**

36.    State the factual basis surrounding your allegations set forth in paragraph 30 of the Complaint.

**ANSWER:    To date, Defendants have not given co-authorship credit to Plaintiff; nor have Defendants tendered royalties past due and owing from the exploitation of the song.**

37.    State and identify any documents forming the basis for the allegations set forth in paragraph 30 of the Complaint.

**ANSWER:    Plaintiff is without knowledge and unaware of any documents forming the basis for the allegations set forth in paragraph 30 of the Complaint. However, the existence of any such documents are within the control and possession of Defendants. Further, discovery is ongoing and Plaintiff shall seasonably supplement this answer.**

RESPECTFULLY SUBMITTED,

BRUCE REGENSTREICH

By: _____

Bruce Regenstreich (2046)
110 Wall Street, Eleventh Floor
New York, New York 10005
212-567-8590

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served

via electronic mail and  first class United States mail, postage prepaid, this 4th day of August,

2008 to:

Jonathan S. Pollack
Attorney at Law
240 Madison Avenue
8th Floor
New York, NY 10016
JSPLegal2000@aol.com

*Attorney for Defendants:   Ramon Ayala-Rodriguez, El Cartel Records, Inc., and Los Cangris Publishing*

Bruce Regenstreich
*Attorney for Plaintiff*